STATE OF VERMONT

ENVIRONMENTAL COURT

| | |
|---|---|
| Town of St. Albans,<br>    Plaintiff, | } } } } |
| v. | } }     Docket No. 109-7-99 Vtec |
| John E. McCracken and Marguerite A. McCracken,<br>    Defendants. | } } } } |
| In re: Appeals of<br>  John E. McCracken and Marguerite A. McCracken, | } } } } } } |

Docket Nos. 117-7-99 Vtec
and  129-7-99 Vtec

Decision and Order

These three consolidated cases all involve a tractor-trailer and truck service and repair facility operated on property owned by Defendant-Appellants John E. McCracken and Marguerite (Peggy) A. McCracken, on Bronson Road in the Town of St. Albans.  In Docket No. 109-7-99 Vtec, the Town took enforcement action against Defendant-Appellants, asserting that they are operating a motor vehicle and equipment sales and service business on their property without a permit.  In Docket No. 117-7-99 Vtec, Defendant-Appellants appealed from the ZBA's decision upholding the Notice of Violation which formed the basis of that enforcement action.  In Docket No. 129-7-99 Vtec, Defendant-Appellants appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of St. Albans, denying conditional use approval for the use.  By docket entry dated September 9, 1999, the Court denied Appellants' motion to stay the enforcement case, but ruled that the decision in the enforcement case will be rendered after the Court has decided the appeals, so that no penalty could be imposed before Appellants' appeal remedies are exhausted.

Defendant-Appellants are represented by Paul S. Gillies, Esq.; the Town is represented by David A. Barra, Esq.; neighbors Steven and Theresa Shaw entered their

1

appearance and represent themselves. An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge. The parties were given the opportunity to submit written requests for findings and memoranda of law. Upon consideration of the evidence and the written memoranda and proposed findings, the Court finds and concludes as follows.

Zoning bylaws have been in place in the Town of St. Albans since 1968. Under the 1968 Zoning Bylaws, the entire west side of Bronson Road was zoned Residential. A portion of the east side was zoned Industrial. Effective in January, 1984, both sides of Bronson Road were zoned Agricultural/Rural except for a short portion of the east side of the road near Lake Road which was zoned Residential. Effective in 1993, the west side and much of the east side of Bronson Road was zoned Rural. A portion of the east side of the road near Lake Road was zoned Commercial, which may be an error in the zoning map compared to the zones adopted in the Zoning Bylaws, but even if it is in error, it does not affect the west side of Bronson Road.

Since 1974, Defendant-Appellants have owned an approximately one-acre lot on the west side of Bronson Road in the Rural zoning district of the Town of St. Albans, containing a small house and an approximately 30' x 70' (described in the 1982 building permit application as 37' x 72') barn. The prior owner sold snowmobiles from the barn, and may have repaired snowmobiles many years before the transfer to Defendant-Appellants. From 1974 to 1982, Mr. McCracken only used the barn for car storage, as he was in cattle sales business and the auto sales business with Ed White at another location.

In 1982, Defendant-Appellants leased the property to Ed White, who applied with Mr. McCracken for a building permit to establish an auto sales and auto body shop in the barn on the property. The permit application, although difficult to read, describes the proposal as: "application to sell automobiles and auto body repair doing business as Ed White Auto Sales." The minutes of the June 10, 1982, meeting of the ZBA relating to this property reflect that the application was approved on the basis that the building had been used for "car or other motor repair for many years," that is, that it was a pre-existing, non-conforming use as of the date of the zoning regulations in effect at that time. We do not here revisit whether the 1982 approval was properly issued. The ZBA imposed a condition that Mr. White would install water to the building within a year.

2

From 1982 until some time within a year prior to the summer of 1985, Mr. White operated a used car sales business at the property. He sold autos there, did body work and basic auto repairs. He did not install water to the building as required by his permit approval.

The Town adopted a new zoning bylaw in December 1983, effective in January 1984.

In July of 1985, Defendant-Appellants presented an application to continue the used car business on the property. The permit application form describes the proposal as "want to use barn for used car sales." The application appears in the minutes of the July meeting as "request of John McCracken to use barn on west side of Bronson Road for used car sales." At the July meeting the applicants stated that "the new operator of the proposed car lot would mainly clean cars and sell a few." In response to a question as to whether the barn would be used for repair work, Mrs. McCracken "replied that she did not believe so." The July meeting was recessed to August for more information as to "the volume of business, number of used cars for sale, what [the] business will be, number of employees, [and] diagram for existing and proposed exiting and entrancing [sic]."

At the August 8, 1985 meeting, Defendant-Appellants stated that they intended to "operate the business as Ed White had only on a smaller scale and only on their side of the street." They stated that they plan to display approximately 20 cars at a time and that the operation would be a family business with one or two employees. Defendant-Appellants did not correct Mrs. McCracken's statement that the barn would not be used for repair work, nor did they state the position that used car sales requires some mechanical work to assure that the cars are in operating condition when they are sold.

In ruling on the application at the August 8, 1985 meeting, the ZBA stated its position that it was "without power to deny this request since [the property] was used within one year as a used car lot," but that it had authority to impose conditions. The permit to operate a used car lot was approved by the board at the August 8, 1985 meeting, with the following three conditions: that the existing driveway be closed and a new driveway shown on a site plan be opened; that no used car is to be displayed within 15 feet from the edge of the road; and that no more than 20 used cars be displayed at one time. Nothing in the minutes of either meeting suggests that used car repair, or repair of any vehicle larger than

3

a passenger vehicle, was occurring on the site, or that the permit was requested for any repair activities or for the presence of trucks or tractor-trailers on the site. Rather, the only mention of repair was Mrs. McCracken's statement that she did not believe that the barn would be used for any repair work. Because the water system required by the 1982 permit had not been installed, however, the building permit was not signed as approved by the Zoning Officer until more than a year later, on December 5, 1986, the date that the water system was actually installed.

In 1985 or 1986, Defendant-Appellants leased the property to David Covillion, who ran a business known as Country Coach on the property. He sold "a few" cars, but mostly did body work and some repair[1] of automobiles. Mr. Covillion left the property as of the end of September 1988. Mr. Steven Shaw has lived on property adjacent to the site since April of 1986.

From October 1988 to some time in 1992, Mr. McCracken continued to store automobiles, sports cars and boats in the barn, but continued to conduct his businesses at his other location. He and his employees went to the barn location only once or twice a month. He sold cars from the barn occasionally, but no sign was displayed and no used cars were on display at the property. He and his employees worked on the vehicles from his other businesses there on weekends once or twice a month. The property was not plowed regularly in the winters. Thus, for a period of more than 18 months after September 1988, the use of the barn for body work, and the use of the property for used car display, for used car sales more than twice a month, and for commercial repair of vehicles, was discontinued. Under §320(c), regardless of Mr. McCracken's intent to abandon it, the non-conforming use of the barn was largely abandoned. As of the end of March 1990, only the barn's use for storage of automobiles and boats in connection with Mr. McCracken's other businesses, and the barn's use up to twice a month for used car sales, remained an allowed non-conforming use under the 1985 permit. Minor repair work

---

[1] As no repair work was authorized by the 1985 permit as a continued non-conforming use, any repair work done on the property as of and after the 1985 permit was potentially a violation.

on the smaller vehicles used in Mr. McCracken's other businesses also continued on a twice-a-month basis, but as repair was not authorized under the 1985 permit, the twice-monthly repair work was not performed under the authority of the permit. Before the doors were enlarged and the ceiling was raised, the barn could only accommodate vehicles up to the size of a one-ton truck.

In 1992, Defendant-Appellants obtained a building permit to "gut, insulate and re-side the barn." Mr. McCracken intended to widen the doors and raise the interior ceilings to accommodate tractor-trailer and other larger trucks, but did not state such use on the permit application. After the doors were widened and the ceiling raised, from 1992 to 1998, he and his employees performed basic maintenance work, such as changing oil and changing tires, on a limited basis in the barn on the vehicles used in his other businesses. The more major repairs of those vehicles were taken to a commercial truck repair shop. Until the ZBA's action on the 1998 permit application, Mr. McCracken believed he owned a "commercial piece of property." In fact, the zoning designation of this property was never changed to Commercial.

In May of 1998, Defendant-Appellants leased the property to Herbert Bartemy, a milk hauler. Mr. Bartemy conducts a commercial business for the repair and servicing of transport trucks, including tractor-trailer rigs. Work is done on Mr. Bartemy's and those used in Defendant-Appellants' various off-site businesses, including Defendant-Appellants' personal vehicles, livestock hauling vehicles, automobile transport vehicles, limousine, and the automobiles offered for sale in the used car sales business. He does not sell used cars from the property nor operate an auto body shop.

In October of 1998, Mr. Bartemy applied for "conditional use approval for a commercial [use]- servicing of transport trucks." At the November 12, 1998 ZBA meeting, it was first presented as an application in the Commercial District, but after a ZBA member questioned whether the property was in the Commercial or the Rural district, the matter was tabled for that determination to be made. After discussion at the December 1998 and January 1999 meetings, the ZBA rejected the permit at the February 11, 1999 meeting on the basis that the property is not located in a commercial zoning district.

Under the current zoning bylaws and the zoning bylaws in effect in 1985 the use category "motor vehicle and equipment sales and service business" is neither a permitted

5

nor a conditional use in the Rural (formerly the Agricultural/Rural) zoning district. Since at least 1985, the zoning bylaws have provided that a non-conforming use "shall not be re-established after being abandoned or discontinued for a period of 18 months, or after being changed to a conforming use, regardless of intent to re-establish such prior use." §320(c).

Neither the 1982 permit nor the 1985 permit authorized an unlimited expansion of the use on the site within the use category "motor vehicle and equipment sales and service business." Rather, those permits authorized a limited continuation of a non-conforming use as provided in §320. Under §320(b) perhaps the ZBA should have applied the variance standard in 1982 and 1985; but even if those approvals were improperly granted they are valid. However, the 1982 and 1985 approvals authorize only the type and extent of use applied for. The non-conforming use provisions of the statute, 24 V.S.A. § 4408, provide a balance between the landowner's right to continue a pre-existing use of the land, and the public interest in regulating those uses as evinced by the properly-adopted zoning ordinance. As the Vermont Supreme Court discussed in Appeal of Gregoire, Docket No. 98-508 (Vt. Supreme Ct., October 21, 1999):

> The public interest in the regulation and gradual elimination of nonconforming uses is strong, and zoning provisions allowing nonconforming uses should be strictly construed. By their very nature, nonconforming uses, defined as "'a use of land or a structure which does not comply with all zoning regulations' where such use was proper prior to the enactment of the regulations," are inconsistent with that purpose. Such uses are recognized and permitted to continue, simply by virtue of their existence prior to the enactment of the ordinance. However, their extension is carefully limited, since the ultimate goal of zoning is to gradually eliminate them. [Citations omitted.]

In the present case, Defendant-Appellants had the right to continue the non-conforming uses allowed by their 1985 approval, under the conditions imposed in that approval, but not to expand those uses. Moreover, under the abandonment provision of the ordinance, §320(c), by discontinuing some of those uses for more than 18 months, they forfeited the right to continue them. Thus, as of the end of March, 1990, Defendant-Appellants only retained the right to continue to use the barn for storage of automobiles

and boats in connection with their other businesses, and to sell used cars from the barn once or twice a month. They did not have the right to expand the uses to repair tractor-trailers or other large transport vehicles, and did not have the right to use the property outside the barn as a salvage yard.

Accordingly, based on the findings and conclusions discussed above, it is hereby ORDERED and ADJUDGED that:

Judgment is entered for the Town in Docket No. 109-7-99 Vtec, the enforcement action, and in Docket No. 117-7-99 Vtec, the underlying notice of violation for the violation. Defendant-Appellants have violated the Zoning Bylaws by operating a commercial facility for the servicing of transport trucks at the property. This decision and order is an entry of final judgment as to the appeal from the notice of violation: Docket No. 117-7-99 Vtec. V.R.C.P. 54(b). However, in light of the Court's September 9, 1999 ruling on the motion for stay, this decision and order is **not** an entry of final judgment as to Docket No. 109-7-99 Vtec. Rather, on or before August 15, 2000, the parties may file supplemental arguments, and may request an additional evidentiary hearing, regarding the Town's request for a fine and appropriate injunctive relief in the enforcement case, in light of the Court's findings, conclusions and order in this decision. The enforcement case, Docket No. 109-7-99 Vtec is the only one for which a final judgment has not been entered concluding the case.

Judgment is also entered for the Town in Docket No. 129-7-99 Vtec, the denial of conditional use approval. Defendant-Appellants' use does not qualify for a conditional use permit either in the Rural zoning district under §315, or as an expansion to a pre-existing, non-conforming use under §320(b). This decision and order is an entry of final judgment as to Docket No. 129-7-99 Vtec. V.R.C.P. 54(b).

Done at Barre, Vermont, this 14th day of July, 2000.

_____
Merideth Wright

7

Environmental Judge